IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

VELMA REGINA JOHNSON )
)
v. ) No. 1:18-0041
)
ANDREW M. SAUL )
  Commissioner of Social Security[1] )

**To:**   The Honorable William L. Campbell, Jr., District Judge

### R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*see* Docket Entry ("DE") 22), to which Defendant has filed a response. *See* DE 23. Plaintiff has also filed a subsequent reply to Defendant's response. *See* DE 24. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. *See* DE 7.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 22) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report.

---

[1] Andrew M. Saul has been appointed Commissioner of the Social Security Administration. He is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on August 12, 2015. *See* Transcript of the Administrative Record (DE 16) at 80-81.[2] She alleged a disability onset date of May 1, 2015. AR 80-81. Plaintiff asserted that she was unable to work because of heart problems, breast abscesses, obesity, ankle problems, diabetes, and breathing problems. AR 82.

Plaintiff's applications were denied initially and upon reconsideration. AR 80-81, 111-12. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Shannon H. Heath on October 2, 2017. AR 31. The ALJ denied the claim on December 20, 2017. AR 14-16. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 13, 2018 (AR 3-5), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision and made the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Myocardial infarction, osteoarthritis, post-traumatic stress disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

---

[2] The Transcript of the Administrative Record is referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Sections 1.02, 4.02, 8.04, and 12.00 of the Listing of Impairments were given particularized scrutiny in reaching this conclusion.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to lifting ten-to-fifteen pounds occasionally, six-to-eight hours of walking and four-to-six hours of standing during each eight-hour timeframe. In addition, the claimant is limited to occasional climbing of ladders, ropes, and scaffolds and to frequent climbing of ramps and stairs. The claimant is also limited to frequent balancing, stooping, kneeling, crouching, and crawling. Although the claimant must avoid concentrated exposure to temperature extremes, she can understand, remember, and carry out simple and detailed, but not complex, tasks. The claimant can maintain concentration, persistence, and pace for two-hour intervals with breaks spread throughout the day. In addition, the claimant can occasionally interact appropriately with the public, co-workers, and supervisors. Finally, the claimant can adapt to occasional changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 5, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 19-24.

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the

> Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 404.1520(a)(4), 416.920(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. §§ 404.1520(a)(iv), 416.920(a)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* §§ 404.1560(b)(1), 416.960(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. §§ 404.1520(a)(v), 416.920(a)(v). In evaluating a claimant's RFC, the ALJ

must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 19-24.

### C. Plaintiff's Assertion of Error

Plaintiff argues that the ALJ committed reversible error by improperly fashioning the mental portion of her RFC. DE 22-1 at 8. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. *Id*. at 12-13.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertion of error below.

**1. Plaintiff's Mental Functionality.**

Plaintiff's argument centers on the ALJ's decision to ascribe functional limitations stemming from her mental impairments without the benefit of a medical opinion. Plaintiff accuses the ALJ of "playing doctor" by failing to recontact a treating physician, procure a consultative examination, or retain a medical expert to testify regarding her mental functionality before formulating the RFC. DE 22-1 at 9-10. Plaintiff also cites the ALJ's failure to discuss the 122 pages of medical records documenting her treatment at Centerstone mental health facility ("Centerstone") in support of her argument. AR 786-907.

The ALJ's analysis of Plaintiff's mental condition is indeed sparse. The ALJ first notes that the administrative record contains no medical opinion pertaining to any alleged mental impairments because Plaintiff did not begin alleging disability due to mental symptoms until after her application had been reviewed by multiple State agency physicians. AR 20. The ALJ emphasized records documenting Plaintiff's urgent care treatment at Maury Regional Hospital for

non-mental conditions on three occasions between 2016 and 2017, one of which included a notation that Plaintiff denied anxiety and depression, which the ALJ determined was "[c]onsistent with the dearth of mental health findings" from the State agency physicians. AR 20, 780, 784. Furthermore, in what appears to be the only reference to the Centerstone treatment records, the ALJ highlighted Plaintiff's admissions that she visits with her neighbors and is sexually active, evidence that the ALJ concluded was inconsistent with Plaintiff's testimony that she was mostly unable to leave her room for the 30-month period preceding the administrative hearing. AR 20, 45. Despite this determination, the ALJ found that posttraumatic stress disorder ("PTSD") and generalized anxiety disorder represent severe impairments that hinder Plaintiff's ability to understand, remember, and carry out simple tasks, maintain concentration, persistence, and pace, interact with the general public, coworkers, and supervisors, and adapt to changes in the workplace. AR 19, 21.

Plaintiff relies on a case from the Northern District of Ohio as support for her argument that the ALJ should have taken additional measures before making any findings with respect to her mental functional capacity:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (internal citation and quotations omitted). Defendant correctly notes, however, that the *Deskin* case has been criticized as being overly broad by other courts, including the Northern District of Ohio. *See Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010)

("*Deskin* ... is not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals."). In fact, the author of the *Deskin* case clarified in a subsequent opinion that *Deskin* "sets out a narrow rule that does not constitute a bright-line test" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). Moreover, it is well-established that while an ALJ has the discretion to facilitate a consultative examination, she is not obligated to do so. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). The ALJ retains the same discretion when deciding whether to re-contact a treating physician. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").

Nevertheless, Plaintiff correctly notes that although the Sixth Circuit has not directly addressed the issue, there is an abundance of case law from this circuit suggesting that an ALJ must generally obtain a medical expert opinion before including functional limitations in the RFC unless the ALJ can "render a commonsense judgment about functional capacity" based on evidence that "shows relatively little" impairment. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (collecting cases). Such guidance is consistent with the Sixth Circuit's admonition that an ALJ "must not succumb to the temptation to play doctor and make [her] own

9

Case 1:18-cv-00041   Document 25   Filed 07/19/19   Page 9 of 15 PageID #: 1012

("*Deskin* ... is not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals."). In fact, the author of the *Deskin* case clarified in a subsequent opinion that *Deskin* "sets out a narrow rule that does not constitute a bright-line test" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). Moreover, it is well-established that while an ALJ has the discretion to facilitate a consultative examination, she is not obligated to do so. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). The ALJ retains the same discretion when deciding whether to re-contact a treating physician. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").

Nevertheless, Plaintiff correctly notes that although the Sixth Circuit has not directly addressed the issue, there is an abundance of case law from this circuit suggesting that an ALJ must generally obtain a medical expert opinion before including functional limitations in the RFC unless the ALJ can "render a commonsense judgment about functional capacity" based on evidence that "shows relatively little" impairment. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (collecting cases). Such guidance is consistent with the Sixth Circuit's admonition that an ALJ "must not succumb to the temptation to play doctor and make [her] own

9

Case 1:18-cv-00041   Document 25   Filed 07/19/19   Page 9 of 15 PageID #: 1012

("*Deskin* ... is not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals."). In fact, the author of the *Deskin* case clarified in a subsequent opinion that *Deskin* "sets out a narrow rule that does not constitute a bright-line test" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). Moreover, it is well-established that while an ALJ has the discretion to facilitate a consultative examination, she is not obligated to do so. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). The ALJ retains the same discretion when deciding whether to re-contact a treating physician. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").

Nevertheless, Plaintiff correctly notes that although the Sixth Circuit has not directly addressed the issue, there is an abundance of case law from this circuit suggesting that an ALJ must generally obtain a medical expert opinion before including functional limitations in the RFC unless the ALJ can "render a commonsense judgment about functional capacity" based on evidence that "shows relatively little" impairment. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (collecting cases). Such guidance is consistent with the Sixth Circuit's admonition that an ALJ "must not succumb to the temptation to play doctor and make [her] own

independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Bearing this in mind, the Court finds that the ALJ's RFC determination is not supported by substantial evidence. This determination is informed by two considerations, the first of which is the ALJ's failure to discuss in any meaningful way the 122 pages of records documenting Plaintiff's extensive treatment at Centerstone. The ALJ instead makes only passing references to these records by noting alleged inconsistencies in Plaintiff's reports of disabling mental symptoms and her smoking habit (AR 20, 22), which, although entirely appropriate for purposes of evaluating her credibility, disregards the Centerstone providers' assessments of Plaintiff's mental condition. This is not an insignificant omission given that the records include diagnoses of major depressive disorder, anxiety, PTSD, insomnia, and alcohol use disorder. AR 790, 793, 795, 798, 801-02. A treating psychiatrist, Dr. Ralph Barr, repeatedly noted that Plaintiff's symptoms caused "noticeable, but modest, functional impairment." AR 812-13, 823-24, 832-33, 856-57. The records also show that Plaintiff was at one point homeless and without insurance and thus unable to "remain fully compliant" with her medication regimen, which hampered her progression. AR 801-02. While an ALJ is not required to discuss every piece of evidence in the administrative record, she is not entitled to simply "ignore ... evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart,* 106 F. App'x. 480, 484 (7th Cir. 2004)). Nor can the Court conclude that these records represent the type of minimal findings that might permit the ALJ to "render a commonsense judgment" about Plaintiff's mental functionality without relying on an opinion from a medical source, *Gross*, 247 F. Supp. 3d at 828, particularly given the complex nature of mental illness:

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain

10

Case 1:18-cv-00041    Document 25    Filed 07/19/19    Page 10 of 15 PageID #: 1013

> objective clinical manifestations of medical illness .... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal citation omitted).

Additionally, and relatedly, the ALJ opinion contains no meaningful explanation of how the mental limitations included in the RFC correspond to the evidence of record, which is required for an opinion to enjoy the support of substantial evidence. *See Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 970 (E.D. Mich. 2017) (holding that an RFC determination that "fails to provide an accurate and logical bridge between the evidence and the result" is not supported by substantial evidence) (internal citations omitted). The ALJ instead misrepresents the evidence of record by claiming that Plaintiff "consistently denied anxiety and depression" during her three visits to the Maury Regional Hospital's emergency room (AR 20), while a review of these notes indicates that Plaintiff "denied" anxiety and depression on just one occasion during a visit that involved treatment for a cat bite. AR 779-80. Notwithstanding the reasonable presumption that Plaintiff's mental state was not a priority for the attending physician at that time,[3] use of the descriptor "consistent" in this context represents a distortion of the record in violation of the adjudicator's basic duty to accurately recite the evidence on which she bases her decision. *See Stanfield v. Colvin*, No. 2:12-cv-213-KSF, 2013 WL 3935071, at *3 (E.D. Ky. July 30, 2013) ("[A]n ALJ may not mischaracterize contrary evidence to support a conclusion.") (citing *Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 575 (6th Cir. 2000)). Such mischaracterization alone is sufficient to warrant reversal of the Commissioner's decision. *See Vonlinger v. Berryhill*, No. CV 16-319-DLB, 2017 WL 2568931, at *7 (E.D. Ky. June 13, 2017) ("[I]naccuracies,

---

[3] The undersigned shares Plaintiff's skepticism that her mental state was considered in any depth while receiving urgent care for a severe physical reaction to a cat bite.

incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand.") (quoting *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011)).

Even discounting the inaccurate portrayal of these emergency room records, it is unclear how Plaintiff's occasional visits with neighbors or sexual activity correspond to the ALJ's finding of "mild" limitation in understanding, remembering, and applying information, or "moderate" limitation with respect to concentration, persistence, or pace maintenance. AR 20-21. Defendant attempts to bolster the administrative opinion by pointing to specific evidence from the Centerstone records regarding Plaintiff's socializing efforts (DE 23 at 7-8), yet such action cannot rescue the ALJ's dereliction of duty. *See Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) ("The Commissioner's attempt to rehabilitate the ALJ's reasoning on this point is precisely the type of analysis the ALJ should have undertaken in the first place."). Nor is it obvious how such evidence relates to Plaintiff's ability to carry out "simple and detailed" tasks or "maintain concentration, persistence and pace for two-hour intervals," as contemplated in the assigned RFC. AR 21. There is simply no opinion that addresses the functional limitations caused by Plaintiff's alleged mental impairment, which means that even if the ALJ appropriately evaluated the numerous Centerstone records, she inappropriately crafted the mental portion of the RFC based on her own interpretation of the evidence of record. *See Chatterton v. Comm'r of Soc. Sec.*, No. 1:12-cv-284, 2013 WL 2353976, at *9 (S.D. Ohio May 29, 2013), *report and recommendation adopted*, 2013 WL 3224036 (S.D. Ohio June 25, 2013) ("There is not one single medical opinion supporting the ALJ's assessment of only 'mild' social functioning limitations. The Court therefore concludes that the ALJ impermissibly created her own lay medical opinion with regard to plaintiff's mental impairments."). Such action necessitates remand for additional consideration.

Defendant cites two Sixth Circuit holdings in support of his position that the ALJ was not required to procure a medical opinion regarding the severity of Plaintiff's mental condition. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (noting that any requirement that an ALJ base the RFC finding on a physician's opinion would improperly "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("[N]either the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC."). However, the *Rudd* decision is distinguishable in two ways. First, the Sixth Circuit held that the ALJ did not violate the bar against interpreting raw medical data because a psychological expert had been retained to testify at the administrative hearing regarding the claimant's mental conditions. 531 F. App'x at 726. Second, *Rudd* appears to stand only for the proposition that an ALJ is "not required to obtain a medical expert to interpret the medical evidence related to [the claimant's] *physical* impairments." *Id.* (emphasis added). Similarly, the *Brown* decision involved an ALJ's decision to formulate the claimant's "*physical* functional capacity based only on treatment records and [the claimant's] testimony." 602 F. App'x at 330 (emphasis added). While the Sixth Circuit has not explicitly decreed that a medical opinion may be eschewed in claims for physical disability only, this narrow interpretation appears to be congruent with the *Deskin* court's sanction of such action in cases where the medical evidence indicates "relatively little *physical* impairment and an ALJ can render a commonsense judgment about functional capacity." 605 F. Supp. 2d at 912 (emphasis added).

Regardless, this specific point need not be resolved at this juncture, as the Sixth Circuit has since delineated the relevant analysis:

> No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative

13

law judge must make a connection between the evidence relied on and the conclusion reached.

*Tucker v. Comm'r of Soc. Sec.*, No. 18-2300, 2019 WL 2418995, at *5 (6th Cir. June 10, 2019). The undersigned finds that the ALJ in the instant matter failed to establish the connection between the mental portion of the RFC and the evidence on which she based this formulation. The ALJ instead misrepresented Plaintiff's reports to Maury Regional Hospital providers and cited only Plaintiff's interactions with neighbors and her sexual welfare before concluding that she does not suffer from a disabling mental impairment. This is certainly not to suggest that Plaintiff does, in fact, suffer from a mental disability. A more thorough analysis of Plaintiff's mental symptoms may reveal that she is even less restricted mentally. To echo the sentiments of a sister court, "[a] medical opinion based on a review of plaintiff's treatment records could connect these dots." *McCaig on behalf of McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *9 (E.D. Mich. Aug. 25, 2017), *report and recommendation adopted*, 2017 WL 4176734 (E.D. Mich. Sept. 21, 2017). As it stands now, however, the ALJ has failed to demonstrate how minor socialization and sexuality correlate with the mental functional limitations contained in the RFC. This matter should therefore be remanded for further consideration.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 22) be GRANTED, the decision of the Commissioner be REVERSED, and this matter be REMANDED for further administrative proceedings consistent with this Report.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.

Fed. R. Civ. P. 72(b)(2). Failure to file specific written objections within the specified time can be deemed to represent a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *Id.*; M.D. Tenn. R. 72.01(b).

                Respectfully submitted,

                _____
                BARBARA D. HOLMES
                United States Magistrate Judge